IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-00244-05-CR-W-DW |
| | ) | |
| JAMES NOEL, | ) | |
| | ) | |
| Defendant. | ) | |

PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(A) and (c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Beth Phillips, United States Attorney, and Cynthia L. Cordes, Assistant United States Attorney, and the defendant, James Noel ("the defendant"), represented by Anita Burns and Laine Cardarella.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count One of the Indictment, 18 U.S.C. § 371, Conspiracy to Commit Sex Trafficking by Force, Fraud or Coercion, a violation of 18 U.S.C. § 1591. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is in fact guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts which the Government can prove constituting the offense to which the defendant is pleading guilty are as follows:

In 2006, JAMES NOEL met Edward Bagley through a joint friend, Michael Stokes. NOEL became friends with Stokes a few months before meeting Bagley while visiting local strip clubs in Lebanon, Missouri, located in the Western District of Missouri. Stokes told NOEL that Bagley had obtained a "slave," "it was the real deal and you had to see it to believe it." Stokes told NOEL that "it was better than the strip clubs," and that "she does whatever Bagley tells her to do." Stokes told NOEL that Bagley allowed other people to "do stuff to her" and engage in oral and vaginal sex with the girl. Stokes told NOEL that he had already engaged in both vaginal and oral sex with her himself.

NOEL went with Stokes to the Bagley trailer in a wooded area in Lebanon, Missouri. When Noel entered the residence, the girl was sitting on the floor inside the Bagley residence. She was wearing feet restraints and very little clothing, including nothing above the waist. The "girl" is the Female Victim ("FV") named in the indictment. Bagley invited them inside and told FV to do exercises while Noel, Bagley, and Stokes talked. FV obeyed. FV was approximately 20-years-old at the time. FV was "not smart" and did not appear to have a full mental capacity of someone her age. She did everything that Bagley told her to do. Bagley laid down the rules and threatened to kick NOEL and Stokes out of the trailer if they did not follow the rules. Bagley especially issued orders to FV. He referred to her only as "slave" and she was only allowed to call Bagley "master." NOEL had never seen anything like it and stayed out of "perverted curiosity." Bagley tortured FV by hooking FV up to an electrical device that was connected to a dildo while Noel and Stokes watched. The device sent electrical pulses to the dildo and shocked FV at random time intervals and random intensities. Bagley told Noel and Stokes that FV had done something wrong and he was training her to remember not to do it again. While FV was hooked to the device and being shocked, Bagley was chatting with NOEL and Stokes. Stokes was clearly excited to be there and enjoyed watching FV.

Stokes provided Bagley with $1,000 for Bagley to transport FV to California. He also brought Bagley steaks, cigarettes, cots, clothing, lighters, and cash when he came to the residence for sessions with FV. Additionally, Stokes paid Bagley $300 for Bagley to build a "fucking machine" to use on FV. Stokes admitted he flogged FV, shocked her vaginal opening with a violet wand, tortured her with a sensory deprivation device, and watched Bagley torture her with a crank phone while she was confined to a dog cage.

NOEL continued to visit the Bagley residence. NOEL would call Bagley on the telephone and schedule the meetings. During these meetings Bagley would torture FV while NOEL watched and sometimes allow NOEL to operate the devices. Bagley introduced FV to "bondage" when she was 17-years-old. Bagley said the first year he knew FV, he "tried to fuck her to death." Bagley had

FV previously sign a sex slave contract. Bagley showed NOEL the contract and there was a "checklist" of everything that FV had to do as his slave. If Bagley had ever established a safe word, FV was not allowed to use a safe word to stop the abuse. It was obvious that if the FV attempted to ask Bagley to stop, Bagley would make the session more painful for her. NOEL had Bagley test a few devices on his arm because he was curious how painful they were. The violet wand was not that painful to NOEL, but the crank phone and another electrical device that Bagley used on FV were extremely painful.

NOEL used the crank phone and another electrical device on FV during his visits to the Bagley residence. These devices were wired inside FV's vaginal and anal openings and to her toes at the start of the sessions. NOEL electrocuted FV with the crank phone, but did not kill her. Sometimes Bagley and NOEL would each use a crank phone on her at the same time. NOEL paid $300 for a special "show" that lasted 2-3 hours that included these sex acts. Stokes wanted to attend the special show, but Bagley would not let him attend. During that special show, Bagley said he had to be very careful that night with FV, because he was taking her to a photo shoot soon and he did not want any burns or marks on her.

NOEL knew that FV hated the crank phone prior to him using it on her. She had previously told Bagley she would do anything if he would spare shocking or electrocuting her with the crank phone. Bagley and NOEL used the crank phone on her anyway. Bagley told NOEL that on one occasion, Bagley cranked FV so intensely that she urinated on herself. Bagley told NOEL he did that because FV had gotten out of line and he needed her to get "back in line." Bagley had at least two crank phones he used on FV, a five-bar, and a three-bar crank phone.

Bagley also showed NOEL photographs of FV with her vagina labia pinned to the wall while she was standing. Bagley also showed NOEL pictures of FV's vagina swollen. Bagley bragged that he had ripped FV's vagina labia. Bagley offered to have FV sew her own vagina while NOEL watched.

Bagley told NOEL that he was going to set up a website where he could stream video "shows" of him torturing FV over the internet and people would have to pay to see them. Bagley asked NOEL to invest in the website, but NOEL declined. Before Bagley and FV went to California, Bagley had FV do practice video shows.

Bagley told NOEL that he had killed a couple of people in the past over a drug debt. Bagley used marijuana regularly and possessed firearms in his residence. Bagley said he overpowered the two people, took them to an abandoned house, and tortured and killed them. FV was present during these statements and based on her demonstrated mental capacity, would have easily believed him. FV appeared emotionally and mentally attached to Bagley without anyway to leave. It was obvious when you met FV that she was mentally delayed for her age. She lacked the ability to communicate normally and had a limited vocabulary. FV did not have any ability to offer an opinion or refuse the orders from Bagley. If she had tried, Bagley would punish her for doing so.

-3-

In approximately 2007, Bagley had FV begin dancing to make money for him. FV was Bagley's only way to make it financially. Bagley said "my bitch is making me about $1,800 a week." NOEL went to the club where FV danced. FV had to give Bagley the money after she was finished dancing, and NOEL saw her do it. FV would come off the stage after collecting money and hand it to Bagley. FV was not allowed to keep the money. NOEL witnessed Bagley scream and reprimand FV at the club. Bagley made a video to help promote FV at the club and it would play repetitively at the bar. Bagley said he had to "make his money while FV still had her youth." During this time period, Bagley told NOEL he had to slow down on the sessions at home with FV because Bagley could not afford to have her all marked up while she was making money for him dancing.

  **4.**  **Use of Factual Admissions.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) or part of the "offense of conviction" pursuant to U.S.S.G. § 1B1.2, and may be used in calculating the offense level for the charge to which he is pleading guilty.

  **5.**  **Statutory Penalties.** The defendant understands that upon his plea of guilty, the maximum penalties the Court may impose are as follows: not more than 5 years of imprisonment, a $250,000 fine, 3 years of supervised release, an order of restitution, and a $100 mandatory special assessment. The defendant agrees to pay in full the mandatory special assessment of $100 no later than the date of sentencing. The defendant further understands that the crime he is pleading guilty to is a felony offense.

  **6.**  **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

a. In determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable."

b. The Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing.

c. In addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed.

d. If the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release.

e. The Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range.

f. Any sentence of imprisonment imposed by the Court will not allow for parole.

g. The Court must order restitution to be paid to victim of the offenses to which he is pleading guilty, the conduct charged in any dismissed counts of the indictment, and all other uncharged related criminal activity. The defendant understands and agrees that entry of a restitution order is mandatory in this case pursuant to 18 U.S.C. § 1593.

h. The Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office.

i. The defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

7. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

8. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses for which it has venue and which arise out of the conduct charged in the Indictment. Further, the United States agrees to dismiss all remaining counts charged in the Indictment at the time of sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises

-6-

made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if additional charges are initiated against him following a breach of this agreement. It is the specific intent of this plea agreement to waive any and all defenses based upon the statute of limitations with respect to any prosecution which is not barred by the statute of limitations on the date this plea agreement is signed by the defendant. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

9. **Cooperation.** Defendant agrees to cooperate fully and truthfully with law enforcement agents investigating criminal activity in the Western District of Missouri and elsewhere. That cooperation includes providing full, complete, and honest statements regarding his knowledge of such activity; actively cooperating in corroborating the information he provides; and testifying fully and truthfully if called as a witness before any Grand Jury, any trial, or any other related proceeding. The cooperation includes being interviewed by any government agent, expert for the government, or prosecutor for the United States. In particular, the defendant agrees:

    a. to provide truthful, complete, and accurate information and testimony in the trial of this matter or in any related hearing;

    b. to provide all information concerning his knowledge of, and participation in, the offenses charged in the Indictment, and any other crimes about which he has knowledge;

    c. to submit to a polygraph examination if requested to do so by counsel for the United States;

d. he will not falsely implicate any person or entity and will not protect any person or entity through false or misleading information or omission and that all information he provides will be truthful, complete, and accurate;

e. to testify as a witness before any grand jury, hearing, or trial when requested to do so by the United States;

f. to hold himself reasonably available for any interviews the United States may require. Defendant waives any right to the presence of counsel at such meetings, debriefings, or pretrial preparation sessions. The parties agree that no prior consultation with defendant's attorney shall be necessary to conduct these meetings, debriefings or interviews, unless defendant's attorney specifically requests such notice;

g. to provide the United States with all documents or other items under his control which may pertain to any criminal violation;

h. to cooperate with any local, state, and federal law enforcement agency as requested by counsel for the United States; and

i. to continue his cooperation after the time he is sentenced if requested to do so by the United States. Failure to continue to cooperate after sentence is imposed constitutes a basis to void this agreement by the United States and will allow the Government to pursue any remedy for defendant's breach including, by way of illustration and not by way of limitation, re-instituting charges that are dismissed pursuant to this agreement.

Defendant understands that the United States will tolerate no deception from him. If, in the good faith estimation of the United States, defendant's information or testimony proves to be untruthful or incomplete in any way, regardless of whether the untruthfulness helps or hurts the United States' case, defendant will have breached this Plea Agreement. In the event defendant breaches the Plea Agreement, the United States will no longer be bound by, and may withdraw from, the Plea Agreement and take defendant to trial on any charges of which the United States is aware. Defendant agrees that if the United States in good faith determines that he has not provided full and truthful cooperation, or has committed any local, state, or federal crime between the date of this Plea Agreement and his sentencing, or has otherwise violated any other provision of this Plea Agreement,

or has violated the terms and conditions of his release while on bond as required by the Court, the United States will be relieved of its obligations under this Plea Agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn, and the defendant shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, perjury, obstruction of justice, and any substantive offenses arising from this investigation. Such prosecution may be based upon any information provided by the defendant during the course of his cooperation, or upon leads derived therefrom, and this information may be used as evidence against him. Further, any prosecution which is not barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against the defendant in accordance with this Plea Agreement, notwithstanding the expiration of the statute of limitations between the time of signing this agreement and the commencement of the prosecution. It is the specific intent of this Plea Agreement to waive any and all defenses based upon the statute of limitations with respect to any prosecution which is not barred by the statute of limitations on the date this Plea Agreement is signed by the defendant.

**10.** **Cooperation Stipulations.** In exchange for the defendant's agreement to cooperate with the United States, the United States agrees not to use new information that the defendant might provide about defendant's own criminal conduct except as specifically authorized by § 1B1.8 of the United States Sentencing Guidelines. As such, this information may be revealed to the Court but may not be used against the defendant in determining the defendant's applicable Guidelines range or departing above the Guidelines range. Defendant understands and agrees, however, that under U.S.S.G. § 1B1.8, there shall be no such restrictions on the use of such information: (1) if it was previously known to the United States; (2) if it was revealed to the United States by, or discoverable

-9-

Case 4:10-cr-00244-DW    Document 108    Filed 02/25/11    Page 9 of 18

through, an independent source; (3) in a prosecution of defendant for perjury or giving a false statement; or (4) in the event there is a breach of this agreement.

11. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

12. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable."

    b. The applicable Guidelines section for the offense of conviction in Count One is U.S.S.G. §§ 2X1.1 and 2A3.1, which provides for a base offense level of 30.

    c. The parties expressly acknowledge that other enhancements or reductions in the defendant's offense level may be applicable and reserve the right to argue for such enhancements or reductions, as set forth in paragraph 14.

    d. Unless the defendant (1) fails to abide by the terms and conditions of this plea agreement and pretrial release; or (2) attempts to withdraw the defendant's guilty plea; or (3) violates the law or otherwise engages in conduct inconsistent with

acceptance of responsibility, the parties agree that at least a 2-level reduction should be made in the offense level for acceptance of responsibility and a 3-level reduction should be made if the court determines the offense level is 16 or higher.

  e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine the applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office.

  f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty.

  g. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, (including the facts that support any specific offense characteristic or other enhancement or adjustment). The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in an indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay.

  h. The United States agrees not to seek an upward departure from the Guidelines or a variance above the Guidelines range. Other than a reduction based on substantial assistance, the defendant agrees that he will not seek a downward departure from the Guidelines, or a variance below the Guidelines range. The agreement not to seek a departure from the Guidelines or non-Guidelines sentence is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable."

  i. The defendant understands and agrees that the factual admissions contained in paragraphs 3 and 4 of this plea agreement, and any admissions that are made during the plea colloquy, support the imposition of the agreed Guidelines calculations contained in this agreement.

**13.**   **<u>Effect of Non-Agreement on Guidelines Applications.</u>** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any

Case 4:10-cr-00244-DW   Document 108   Filed 02/25/11   Page 11 of 18

Sentencing Guidelines issues other than those specifically listed in Paragraph 13 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

14. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

15. **Financial Obligations.**

By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. This includes future restitution for counseling and medical costs calculated and projected by a government expert. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged related criminal activity.

    b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

    c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

Case 4:10-cr-00244-DW   Document 108   Filed 02/25/11   Page 12 of 18

d. Within 10 days of the execution of this plea agreement, at the request of the United States Attorney's Office (USAO), the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of all financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100.00 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**16. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a.    oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b.    comment on the evidence supporting the charges in the Indictment;

    c.    oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed; and

    d.    oppose any post-conviction motions for reduction of sentence, or other relief.

**17. Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a.    the right to plead not guilty and to persist in a plea of not guilty;

    b.    the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c.    the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d.    the right to confront and cross-examine the witnesses who testify against him;

    e.    the right to compel or subpoena witnesses to appear on his behalf; and

    f.    the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense to which he pleaded guilty, and if the defendant answers those

questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement.

**18.** **Waiver of Appellate and Post-Conviction Rights.**

a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement.

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**19.** **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**20.** **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**21.** **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant

-15-

Case 4:10-cr-00244-DW   Document 108   Filed 02/25/11   Page 15 of 18

provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**22.** **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

**23.** **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions constitute the entire plea agreement between the parties,

and that any other terms and conditions not expressly set forth in this agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**24.  Standard of Interpretation.**  The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings.  The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Beth Phillips
United States Attorney

Dated:   2/24/2011

*/s/ Paul Becker*

Paul Becker
Assistant United States Attorney
Chief, Violent Crimes Strike Force Unit


*/s/ Cynthia L. Cordes*

Cynthia L. Cordes
Assistant United States Attorney
Violent Crimes Strike Force Unit

*/s/ John Cowles*

John Cowles
Assistant United States Attorney
Cyber Crime & Child Exploitation Unit

CLC/lm

I have consulted with my attorneys and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorneys and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorneys. I understand this plea agreement and I voluntarily agree to it.

Dated: 2/24/2011

*/s/ James Noel*

James Noel
Defendant

We are defendant James Noel's attorneys. We have fully explained to him his rights with respect to the offense charged in the Indictment. Further, we have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. We have carefully reviewed every part of this plea agreement with him. To our knowledge, James Noel's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 2/24/2011

*/s/ Anita Burns*

Anita Burns
Attorney for Defendant

*/s/ Laine Cardarella*

Laine Cardarella
Attorney for Defendant